**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CALVIN CARTER | ) | |
| | ) | No. 25 CV 13520 |
| Plaintiff | ) | |
| | ) | Judge Mary M. Rowland |
| Vs. | ) | |
| | ) | |
| BANK OF AMERICA, N.A. | ) | |
| DATA SEARCH, NY, INC. d/b/a Trakamerica | ) | |
| BLITT AND GAINES, P.C., | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANT BLITT AND GAINES, P.C.'S MOTION TO DISMISS COMPLAINT
PURSUANT TO RULE 12(b)(1)**

Defendant, Blitt & Gaines, P.C.("Blitt"), by and through counsel, Michael L. Starzec, respectfully submits its Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and in support thereof, states as follows:

### I.      **Preamble**

Plaintiff's purposefully pronounces that his claims are "outside the scope of the Rooker-Feldman doctrine" as "independent violations" of state and federal law. **(Dkt. 1, ¶29)** However, the state court record discloses that not only did the state trial court enter a judgment against the Plaintiff in a collection action, but that the *identical* issues raised in this action were adjudicated *against* the Plaintiff. In fact, the state court record details that Plaintiff raised and the court ruled on the same claims prior to the trial – at a hearing to strike fraud affidavit against Blitt attorneys three months prior to trial. This means the Plaintiff is seeking a third bite at a rotten apple. Accordingly, the Complaint may fatally fail for two doctrinal principles, not only *Rooker-Feldman* but under *res judicata.* Nor does this account for the lack of Article III standing.

## II.    Statement of Facts

On May 1, 2023, Bank of America ("BANA") by and through its attorneys, Blitt and Gaines, P,C, ("Blitt") filed a collection action entitled *Bank of America, N.A. v. Calvin Carter,* under case number 2023 M1 109810, alleging that Plaintiff was liable on a defaulted credit card in the sum of $7,599.65. ("Collection Action") The Collection Action was supported by an affidavit that swore the Defendant opened the account on February 5, 2016, that he made his last payment on February 12, 2022 and that the account was charged off on October 31, 2022. **(See the filed Collection Action at Exhibit A, Bates 3-4)**

On October 23, 2024, the Plaintiff filed an Illinois Supreme Court Rule 280.5 fraud affidavit where he alleged that the account was opened fraudulently by two Blitt attorneys: Barbara Nilsen [1] and Karen Filippello [2]:

> (14) ☑ To the best of my knowledge and belief, the following person(s) used my information (for example, my name, address, date of birth, existing account numbers, Social Security number, mother's maiden name, etc.) or identification documents to get money, credit, loans, goods or services without my knowledge or authorization:
>
> Barbara Nilsen
> Name (if known)
>
> Karen Filipello
> Name (if known)
>
> 775 Corporate Woods Pkwy
> Address (if known)
>
> 775 Corporate Woods Pkwy
> Address (if known)
>
> 847-403-4900
>
> 847-403-4900

**(See the filed Fraud Affidavit at Exhibit B, Bates 8)**

He swore that the personal identifiers that opened the account were stolen in September, 2023 **(See Exhibit B, Bates 8)**:

> (13) ☑ My identification documents (for example, credit cards, birth certificate, driver's license, Social Security card, etc.) were ☑ stolen ☐ lost on or about ___28 / 9 / 2023___.
> (day/month/year)

On December 5, 2024, Blitt, on behalf of BANA, filed a motion to strike the Fraud

---

[1] blittandgaines.com/about/
[2] www.iardc.org/Lawyer/SearchResults#

Affidavit noting (1) The temporal impossibility of Nilsen or Filippello having fraudulently opened a 2016 account in 2023; (2) That Nilsen and Filippello's only connection with the Plaintiff was that they had signed letters and verification responses to Plaintiff's disputes; and (3) That it is not "fraud" claim when BANA verified according to the law, not the Plaintiff's fifteen verification demands that appeared in his disputes, which was far beyond what the FDCPA required. Additionally, Blitt noted that Plaintiff had disputed the debt under § 1692g eleven times. **(See Exhibit C, Bates 4-5, ¶¶ 18, 19 & 23)**

Plaintiff's response to BANA's motion was that he had never made a claim of application Fraud (which is contradicted by his Fraud Affidavit) and that this Rule 280.5 Fraud affidavit was a result of "collusive fraud." **(See the Plaintiff's Response at Exhibit D, Bates 5 ¶¶ 18)** Additionally, the Plaintiff also included a transcript of a call he had made with BANA where he admitted he had opened the Account:

> Shakara 05:19
> *inaudible* here all these questions are *inaudible*. Is this a bad account?
>
> Shakara 05:26
> Like did you make this account? Create this account?
>
> Calvin 05:29
> Yeah. I did have the account ending in 1777.

**(See Exhibit D, Bates 10)**

On April 29, 2025, the state court granted BANA's motion to strike the fraud affidavit and set the matter for trial on July 15, 2025. **(See the Motion Order at Exhibit E)**

On July 15, 2025, the Collection Action proceeded to trial. At trial, the fraud and collusion allegations figured so significantly in his defense that, when the state court ruled in favor of BANA, the court found Starzec and/or Nilsen nor other Blitt employee committed fraud:



[_____] Plaintiff granted leave to file dispositive motion.
[ X ] The court finds that any testimony & evidence with respect to the commission of fraud by Mike Starzec, Barb Nilsen or any employee of Blitt & Gaines. or Bank of America is found to be not "credible".

**(See the Judgment Order at Exhibit F)**

On November 14, 2025, after the Carter filed an appeal of the trial court's judgment under appellate case number 1-25-1406, the trial court certified a Bystander's Report which showed that in ruling for BANA, the trial court had:

- Heard testimony regarding the fraud claims that Carter seeks to have redressed in this federal action. (**See the Court-Approved Bystander's Report at Exhibit G, Bates 6-7)**
- That Carter testified he has no initiated post charge-off fraud claims. (**See Exhibit G, Bates 7 )**
- That Carter alleged that "due to fraudulent fraud claims and unauthorized chargebacks Bank of America created a fraudulent debt that Mr. Carter owed more than $83,000…" **(See Exhibit G, Page 7)** A claim this is demonstrably false based on the Complaint and Judgment Order (Exhibits A and F)
- That Carter admitted that *he* had filed fraud affidavits in the state court action. **(See Exhibit G, Bates 6-7_**

The Bystander's Report further affirmed that the trial court "found Mr. Carter's nebulous fraud claims to be not credible" and confirmed the language in the Judgment Order that "any testimony with respect to the commission of fraud by Mike Starzec, Barb Nilsen or any employee of Blitt and Gaines, P.C. or Bank of America is found to be not credible." **(See Exhibit G, Page 6)**

### III.     Standards of Review

*12(b)(1) Motion Standards*

Rule 12(b)(1) provides for dismissal of an action if the court lacks jurisdiction over the subject matter of the action. As federal courts possess limited subject matter jurisdiction, the preferred practice is that when confronted with a challenge to its subject-matter jurisdiction, a

court should resolve that question before weighing the merits of a pending action. *Narragansett Indian Tribe of Rhode Island v. Elaine L. Chao*, 248 F. Supp. 2d 48, 49-50 (D.C. RI. 2003).

*12(b)(6) Motion Standards*

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In assessing a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in a light most favorable to the Plaintiff and must accept as true all well-pleaded allegations, drawing all inferences in Plaintiff's favor. *Golden v. Helen Sigman & Associates, LTD*, 611 F.3d 356, 360 (7th Cir. 2010). However, dismissal is proper if the complaint does not set forth "enough facts to state a claim for relief that is plausible on its face." *St. John's United Church of Christ et al v. City of Chicago et al,* 502 F.3d 616, 625 (7th Cir. 2007)(quoting *Bell Amex Corp., et al. v. Twombly, et al.,* 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007).

*Judicial Notice – Public Records & Incorporation by Reference*

It is understood that in dismissal proceedings, a court may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned. *Parungao v. Cmty. Health Sys*., 858 F.3d 452, 457 (7th Cir. 2017) as cited in *Brown v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 21 C 1120, 2021 WL 3910748, at *2 (N.D. Ill. Sept. 1, 2021)

Further, the phrase "the face of the complaint refers not just to its four corners but includes sources courts ordinarily consider when deciding a Rule 12(b)(6) motion, such as documents incorporated into the complaint by reference and public records of which the court may take judicial notice. *Holmes v. Marion Cnty. Sheriff's Off*., 141 F.4th 818, 822 (7th Cir. 2025), reh'g denied, No. 22-3032, 2025 WL 2078828 (7th Cir. July 23, 2025). Further, [t]he

district court may also take judicial notice of matters of public record" without converting a 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994)

### IV. Argument for Dismissal under 12(b)(1)

**A. B. Plaintiff has not Alleged a Concrete Injury**

**i. Standards**

Under Article III, a bare procedural violation divorced from a concrete harm cannot satisfy the injury-in-fact requirement of Article III because Article III does not grant federal courts a freewheeling power to hold defendants accountable for legal infractions. *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019). Rather "courts may entertain FDCPA claims only when the plaintiff suffers a concrete harm that he wouldn't have incurred had the debt collector complied with the Act." *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 669 (7th Cir. 2021) For an Article III injury to be concrete, it requires a detriment that results in actual damages where the consumer "pay[s] something she does not owe or pay a debt with a low interest rate when that money could be used to pay a debt with interest running at a higher rate." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020).

**ii. Argument**

Here, the Plaintiff does not allege that he paid Blitt on the Account before judgment. . His sole allegation as to monetary harm is in his prayer for relief where he conclusively demands "actual damages" But, within the body of the Complaint, his allegations are that Plaintiff suffered:

45. As a direct and proximate result of these misrepresentations, Plaintiff suffered reputational harm, emotional distress, and financial loss, including the appearance of an invalid debt on his credit reports, adverse legal consequences, and ongoing injury to his financial standing and credibility

**(Dkt. 1, ¶ 45)** As well, Plaintiff states he suffered "reputational, emotional and financial harm."

**(Dkt. 1, ¶ 47)** However, it is well-established that a purely emotional or psychological harm do not suffice to establish Article III standing. *Pierre v. Midland Credit Mgmt, Inc.*, 29 F.4th 934, 939 (7th Cir. 2022); *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020); *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 781 (7th Cir. 2021); accord *Pennell v. Glob. Tr. Mgmt., LLC,* 990 F.3d 1041, 1045 (7th Cir. 2021

What remains is the claim of reputational harms. It is generally understood there is no concrete injury requirement for credit reporting claims under the FDCPA, *Evans v. Portfolio Recovery Assocs.,* LLC, 889 F.3d 337, 349 (7th Cir. 2018). That being said, when alleging credit reporting claims through an FDCPA claim, the allegations generally relate to the creditors failure to report a debt as disputed. (*See Evans, Wood v. Sec. Credit Servs., LLC*, 126 F.4th 1303, 1310 (7th Cir. 2025), reh'g denied, No. 23-2071, 2025 WL 462078 (7th Cir. Feb. 11, 2025); *Centeno v. LVNV Funding, LLC*, No. 17 C 5233, 2020 WL 7310761, at *3 (N.D. Ill. Dec. 10, 2020) But, Plaintiff's complaint established, the "reputational" injury is that it admits that the credit reporting only for a disputed status *after* the judgment entered **(Dkt. 1 ¶ 27)** In other words, the disputes were reported and reported accurately This spells out that the reporting *was* accurate and only changed after an independent trier-of-fact found his disputes lacked credibility and entered judgment for BANA. That is not a reputational harm in any case, much less one

induced by Blitt. In reality, it is merely a reflection of an outcome at trial. As will be seen later in his pleading, it is unlikely that Blitt is even a furnisher of information.

### B. The Rooker-Feldman Doctrine Bars Plaintiff's Claim

#### i. Standards

Under 28 U.S.C. § 1257(a), only the Supreme Court is "vested with appellate authority over state courts." *Sykes v. Cook County Circuit Court Probate Div.*, 837 F.3d 736, 741 (7th Cir. 2016). The *Rooker-Feldman* doctrine recognizes that Congress has not "authorize[d] district courts to exercise appellate jurisdiction over state-court judgments." *Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 644 n.3, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002), citing 28 U.S.C. § 1257(a). Notwithstanding Plaintiff's assertions, *Rooker-Feldman,* like *res judicata,* applies where the party had a reasonable opportunity to raise their federal issues in state courts. *Gilbank v. Wood Cnty. Dep't of Hum. Servs.,* 111 F.4th 754, 766 (7th Cir. 2024), cert. denied, 145 S. Ct. 1167, 221 L. Ed. 2d 250 (2025)

There are four elements to a *Rooker-Feldman* analysis. First, the federal plaintiff must have been a "state-court loser." Second, the state-court judgment must have become final prior to the inception of the federal claims. Third, the state-court judgment must have caused the alleged injury and fourth, the claim must invite the federal district court to review and reject the state-court judgment. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) as cited in *Gilbank v. Wood Cnty. Dep't of Hum. Servs.,* 111 F.4th 754, 766 (7th Cir. 2024), cert. denied, 145 S. Ct. 1167, 221 L. Ed. 2d 250 (2025)

#### ii. Argument

All the necessary elements are met. The Judgment Order that establishes that the Plaintiff was a "state-court loser" was entered on July 15, 2025, is prior to Plaintiff's initiation of

the instant action.  Plaintiff claims the judgment is the source of the injuries, as well.   For example, in his complaint he alleges the Defendants:

> "jointly and lawfully orchestrated a debt collection, litigation and credit reporting scheme by submitting false information, fabricating chargeback communications and misusing Plaintiff's private information, without consent – causing ongoing harm to Plaintiff's credit and reputation **before, during and after the state-court proceedings** relating to *Bank of America v. Carter, 2023 M1 109810"* (Dkt. 1, ¶ 2) (Emphasis in original)

Further, by virtue of the judgment, Plaintiff alleges his credit bureau disputes were modified or deleted.  (**Dkt. 1 ¶ 27**)  Plaintiff next pleads that "as a result of fabricated documents and misrepresentations he suffered damages "including the appearance of a state-court judgment based on inaccurate information."  (**Dkt. 1 ¶ 28**)   Hence, the Defendant is both attacking the judgment *and* the evidence that undergirded the trial court's judgment.   But as will be seen more fully in Blitt's 12(b)(6) arguments relating to *res judicata,* the court already determined the evidence was not fabricated documents.  On the basis if the evidence, the judgment entered.  Accordingly, this action is seeking to undermine the findings of fact and law and the credibility determination of the trial court, seeks to punish litigants for arguments previously heard and discounted – the definition of undermining the judgment.   Clearly, by claiming that the judgment led to changes in Plaintiff's credit reporting disputes, the impact caused by the judgment is at issue, meaning *Rooker-Feldman* applies.

### iii.    Attorneys are not Liable under the Illinois Consumer Fraud Act

It is well-established that the Illinois Consumer Fraud Act (815 ILCS 505/1 et seq. (West 2014)) ("Act") does not "apply to regulate the conduct of attorneys in representing clients." *Cripe v. Leiter,* 184 Ill.2d 185, 199, 234 Ill.Dec. 488, 703 N.E.2d 100 (1998). Our supreme court has made clear that "where allegations of misconduct arise from a defendant's conduct in his or her capacity as an attorney representing a client, the Consumer Fraud Act does not apply." *Id.*

(See also *Kosydor v. American Express Centurion Services Corp.*, 365 Ill.Dec. 757, 979 N.E.2d 123, 2012 IL App (5th) 120110, ¶ 37–39 ("the Act does not apply to the conduct of attorneys when representing any client in the practice of law, even against a third party.").    As result, the state court claim fails as a matter of law.

## II.        Blitt's 12(b)(6) Motion to Dismiss the Complaint

### A.        Dismissal under 12(b)(6) Should be Granted Because *Res Judicata* bars Plaintiff Claims

#### i.        Standards

When deciding is a federal claim is barred by *res judicata,* the preclusive law of the state that rendered the judgment determines whether res judicata applies.   *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996); *E.B. Harper & Co., Inc. v. Nortek, Inc.*, 104 F.3d 913, 921 (7th Cir.1997); see also 28 U.S.C. § 1738 (extending preclusive effect to state court proceedings in federal court).   Therefore, Illinois law applies.

Under Illinois law, "a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action." *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883, 889 (Ill.1998) as cited in *Hicks v. Midwest Transit, Inc*., 479 F.3d 468, 471 (7th Cir. 2007)

In reviewing the previous litigation, three requirements must be satisfied before *res judicata* precludes a claim: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Nowak v. St. Rita High Sch.,* 197 Ill.2d 381, 258 Ill.Dec. 782, 757 N.E.2d 471, 477 (Ill.2001) as cited in  *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007).  Additionally, *res judicata* bars not only issues that were actually raised in the prior

proceeding but also issues which could have been raised in the prior proceeding. *Id.* (internal citations omitted.)

Federal courts will not apply *res judicata* if the plaintiff did not have a full and fair opportunity to litigate his claim in state court, which means the plaintiff must have been afforded a full and fair opportunity to litigate his claims and state court proceedings complied with the minimum procedural requirements of the Due Process Clause. *Licari v. City of Chicago,* 298 F.3d 664, 667 (7th Cir.2002)

### ii. The Standards For *Res Judicata* Are Met

Although *res judicata* is an affirmative defense typically raised in an answer, where an affirmative defense is disclosed in the complaint, it provides a proper basis for a Rule 12(b)(6) motion." *Carter v. J.P. Morgan Chase Bank*, 2017 WL 1304117, at *2 (N.D. Ill. Apr. 7, 2017), aff'd sub nom. *Carter v. JPMorgan Chase Bank, N.A.*, 693 F. App'x 461 (7th Cir. 2017) (citing *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008)).

As the Statement of Facts sets forth, the Plaintiff has had a practically unlimited opportunity to litigate the exact claims in state court. The Judgment Order and appellate Bystander Report leave no doubt that Plaintiff's claims of fraud against Blitt and Blitt employees were litigated and determined to be without credibility at a trial. Indeed, the state court's findings mirrored an earlier judge's decision when that judge struck Plaintiff's fraud affidavit which accused Blitt employees of opening a credit card account. Despite that finding, he trial judge allowed Plaintiff to *relitigate* his claims on the merits, under oath, with the ability to cross examine a BANA witness and present evidence of the alleged fraud at the trial so that no defenses were foreclosed by virtue of the earlier ruling.

There is also an identity of the cause of action because the FDCPA claim is premised on

Blitt's fraud while Counts III & IV are statutory and common law fraud based on the same conduct.  To be clear, while the Plaintiff did not raise counterclaims, his defense was fraud. (**See Dkt. 1, ¶¶ 9, 12, 21, 31 & 32)**  Moreover, there is identity of the parties because, while there was no cross claim against Blitt, the entire defense against the Collection Action was fraud by Blitt and/or BANA.  Finally, both the Judgment Order and the Bystander Report disclose that while the Plaintiff actively alleged that fraud by Blitt operated as a defense, the trial court expressly found Blitt did not commit fraud and that Plaintiff's claims lacked credibility.   Therefore, all three grounds for the application of *res judicata* are fulfilled.  Finally, Plaintiff's opportunity was more than full and fair opportunity – the trial court allowed him to relitigate the issues of fraud against Blitt at the trial, after had stricken his Fraud Affidavit in April, 2025.

### B. Blitt Relied on Creditor Data in Litigating the Collection Action

Plaintiff argues that Blitt's conduct in the litigation is the source of the FDCPA violation. But Blitt's acknowledged role in the litigation was as an attorney retained by BANA for litigation purposes and, as the record shows, the judgment entered on the weight of BANA's evidence and testimony.  **(See Exhibit A)**  The motion to strike the fraud affidavit was also based upon data provided by BANA – the open date, the charge off date, and how those dates preceded Blitt's involvement in the matter.  **(See Exhibits A & C)**

In relying on client data, Blitt cannot be liable.  The 7th Circuit has established that a debt collector may reasonably rely on the information its creditor-clients provide and are not required to conduct independent investigations into the validity of individual debts. See *Jenkins v. Heintz*, 124 F.3d 824, 832 (7th Cir. 1997) & *Hyman v. Tate and Kirlin,* 362 F.3d 965, 968  (7th Cir. 2004)   Even more, a debt collector is not assumed to possess the knowledge of its client because  " [a] distinction between creditors and debt collectors is fundamental to the FDCPA,

which does not regulate creditors' activities at all. Courts do not impute to debt collectors other information that may be in creditors' files—for example, that debt has been paid or was bogus to start with." *Randolph v. IMBS, Inc*., 368 F.3d 726, 729–30 (7th Cir. 2004). Such knowledge is may not be imputed because "debt collectors are independent contractors." *Id.* Hence, since Blitt's involvement in this action was BANA's attorney, it was allowed to rely on BANA's information that the debt was thoroughly investigated after the dispute and found valid, a faith vindicated by the outcome at the trial. Plaintiff cannot state a claim.

### C. Blitt is Neither a Creditor Nor A Reporter of Information

While Blitt is not named in the Plaintiff's FCRA claim, Plaintiff alleges Blitt violated the FDCPA by submitting false "chargebacks." Traditionally, a chargeback is a term found in credit agreements between issuers and cardholders where disputed charges may be put back on statements if the merchant provides a sufficient response to the dispute. *Satellite Receivers, Ltd. v. Household Bank (Nevada) N.A.,* 49 F. Supp. 2d 1083, 1085 (E.D. Wis. 1999). Blitt was retained to file suit on the debt *after* the account was charged off. To the extent the Plaintiff alleges the creditor improperly charged-back transactions, Blitt is a third-party, independently contracted attorney, working on behalf of a creditor – who, by law, is not required to investigate their clients' claims. *Randolph v. IMBS, Inc*., 368 F.3d 726, 729–30 (7th Cir. 2004). It is understood that "[a}gency principles do not trump the statutory restrictions." *Chester v. Purvis,* 260 F. Supp. 2d 711, 718 (S.D. Ind. 2003).

To the extent the Plaintiff believes a chargeback relates to credit reporting, for the purposes of the FCRA, "a furnisher of information," is an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies." Fair Credit Reporting Act, § 605 et seq., 15 U.S.C.A. § 1681c et seq, see *Rivera Martell v. Am.*

*Express Co*., 598 F. Supp. 2d 177 (D.P.R. 2008)  As seen above, Blitt is a third-party, independently contracted attorney, litigating the matter, not reporting the debt.

### D. Plaintiff Cannot State a Claim for Common Law Fraud or Fraudulent Misrepresentation

To prevail on a common law fraud, a plaintiff must prove five elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage … resulting from such reliance." *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003). Anyone who aids and abets a fraud is "also guilty of the tort of fraud ...." *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). To state a claim for aiding and abetting under Illinois law one must allege "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant is aware of his role when he provides the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Id*.  This lack of the most fundamental allegation in a fraud claim requires dismissal.

In a similar vein, to establish a fraudulent misrepresentation claim, Plaintiffs must show: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Kramer v. Am. Bank & Tr. Co., N.A.,* No. 11 C 8758, 2017 WL 1196965, at *2 (N.D. Ill. Mar. 31, 2017), *adhered to on reconsideration,* No. 11-CV-08758, 2018 WL 4052162 (N.D. Ill. Aug. 24, 2018)

But the Plaintiff cannot establish the existence of the most necessary requirement for either theory – a false statement.  The Judgment Order and Bystander's Report makes explicit – every one of the alleged falsehoods were heard and not found credible.   Effectively, the Plaintiff has lost at every level – motion practice and after a full trial – but believes that he can make the

same outrageous claims in a different venue to avoid the final result at trial. Plaintiff's action should be dismissed.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court dismiss this lawsuit, with prejudice, and for any further relief this Honorable Court deems equitable and just.

Respectfully submitted,

By: s/Michael L. Starzec -6230325
Michael L. Starzec

Blitt and Gaines, P.C.
Michael L. Starzec
775 Corporate Woods Parkway
Vernon Hills, IL 60061
(847) 403-4900
Mike@BlittandGaines.com