BC

FILED
9/21/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

EMS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| CALVIN CARTER<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A. AND<br><br>DATASEARCH NY INC D/B/A TRAKAMERICA AND<br><br>BLITT AND GAINES, P.C.,<br><br>Defendants | Case No.: 1:25-cv-13520<br><br>Judge Mary M. Rowland |

**PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FED. R. CIV. P. 59(e), AND, IN THE ALTERNATIVE, FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT**

Plaintiff Calvin Carter, proceeding pro se, respectfully moves pursuant to Federal Rule of Civil Procedure 59(e) for reconsideration of the Court's September 17, 2026 Order dismissing this action for lack of subject-matter jurisdiction under the Rooker-Feldman doctrine, Dkt. 51, and to alter or amend the resulting September 18, 2026 Judgment, Dkt. 52.

Plaintiff does not seek reconsideration merely because the Court ruled against him, nor does Plaintiff ask this Court to overturn, reduce, vacate, or otherwise modify the

July 15, 2025 state-court judgment requiring him to pay Bank of America $7,599.65 plus costs.

Instead, Plaintiff respectfully submits that the Court's jurisdictional analysis committed a manifest error by treating all alleged federal injuries as injuries caused by the state judgment, notwithstanding Plaintiff's expressly preserved allegations and arguments concerning independent post-dispute conduct governed by 15 U.S.C. § 1681s-2(b), including later credit-reporting, verification, claim-processing, and as well as separete debt-collection conduct.

The Court further concluded that merely considering Plaintiff's federal claims would require impermissible review of the state court's credibility finding. Respectfully, that conclusion does not give independent effect to the fourth Rooker-Feldman requirement as clarified by the Seventh Circuit in Gilbank v. Wood County Department of Human Services, 111 F.4th 754, 792–95 (7th Cir. 2024) (en banc).

Plaintiff therefore requests that the Court alter or amend the judgment and reinstate those claims premised upon independent federal injuries and duties that can be adjudicated without reversing or modifying the state judgment. Alternatively, Plaintiff requests that the judgment be vacated for the limited purpose of allowing Plaintiff to file a First Amended Complaint that removes judgment-dependent allegations and remedies and confines this action to independent statutory conduct.

## I. LEGAL STANDARD

Rule 59(e) permits a district court to alter or amend a judgment where the movant

clearly establishes a manifest error of law or fact or newly discovered evidence. Cincinnati Life Insurance Co. v. Beyrer, 722 F.3d 939, 954 (7th Cir. 2013); Oto v. Metropolitan Life Insurance Co., 224 F.3d 601, 606 (7th Cir. 2000).

A manifest error is not established merely because the losing party disagrees with the decision; it includes the wholesale disregard, misapplication, or failure to recognize controlling precedent. Oto, 224 F.3d at 606. Rule 59(e) allows the district court to correct such an error in the first instance and thereby avoid unnecessary appellate proceedings.

Plaintiff recognizes that Rule 59(e) is not an opportunity to present arguments that could and should have been raised before judgment. The arguments presented below, however, were raised before judgment. Indeed, the Court's Order expressly acknowledges that Plaintiff argued that his injuries existed independently of the state judgment, arose from "post-judgment chargeback and verification conduct," and resulted from later furnishing and verification decisions. Dkt. 51 at 6–7; see also Dkt. 46 at 1–2.

The present motion therefore asks the Court to reconsider the legal treatment of arguments already presented, rather than to entertain a new theory.

Where judgment is entered at the pleading stage without allowing leave to amend and the plaintiff timely seeks Rule 59(e) relief in order to amend, the Seventh Circuit has held that Rule 15(a)(2)'s liberal amendment standard applies. Reilly v. Will County Sheriff's Office, 142 F.4th 924, 929–30 (7th Cir. 2025); Agee v. Hickenbottom, Nos.

25-1737 & 25-2180, slip op. at 7 (7th Cir. July 17, 2026); Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana, 786 F.3d 510, 521 (7th Cir. 2015).

## II. THE COURT'S SOURCE-OF-INJURY ANALYSIS DID NOT GIVE INDEPENDENT EFFECT TO PLAINTIFF'S ALLEGED POST-DISPUTE AND LATER CONDUCT

The Court correctly recognized that Rooker-Feldman is narrow and identified the requirements governing its application. Dkt. 51 at 5–6. The third requirement asks whether the state-court judgment caused the injury underlying the federal claim. Gilbank, 111 F.4th at 766 - 767.

Plaintiff expressly argued before judgment that his federal injuries were not caused by the July 15, 2025 judgment. In his Consolidated Memorandum, Plaintiff stated: "This case concerns post-judgment and extra-judicial conduct—specifically, the fabrication, transmission, and furnishing of credit and 'chargeback' data, and the use of that data in federal credit reporting systems, before, during, and after the state proceedings." Dkt. 46 at 1.

Plaintiff further identified the alleged injuries as arising from:

- the creation and furnishing of disputed chargeback and dispute data;
- transmission of that data to consumer reporting agencies;
- failure to conduct reasonable investigations;
- and continuing publication or verification of allegedly inaccurate tradelines. Id.

at 2.

Plaintiff expressly argued that those alleged injuries "exist independently of the state judgment and would exist even if no state case had ever occurred." Id.

The Court's Order recognized this argument but concluded, "Taking Carter's complaint as true, the injuries alleged in the complaint were the result of the state court judgment." Dkt. 51 at 7.

The Court reasoned that "the alleged fraudulent behavior occurred during the state court proceeding under the nose of the state court judge" and that "[t]he state court judgment against Carter led to this case." Id.

Respectfully, whether the state litigation led to the federal case is different from whether the state judgment caused the injury underlying each federal claim.

The Court's background section states that "On February 5, 2016, Carter opened a credit card account with BANA," citing Complaint [1] ¶16. Dkt. 51 at 3. But ¶16 does not allege that Plaintiff opened the account on that date. It alleges that BANA's own February 11, 2025 CFPB response admitted that Fraud Application Claim ID 230607G1A51F was opened on June 7, 2023 "from Plaintiff's initial correspondence—not by phone or online application"—and that the same response listed the account as opened on December 24, 2021, "instead of the original February 5, 2016 date." Compl. ¶16. Plaintiff alleged that this discrepancy showed Defendants had "recoded Plaintiff's 2023 validation letter as Claim 230607G1A51F, causing unauthorized chargebacks and false credit reporting." Id. The federal FCRA theory

therefore was not about whether the original account existed or who opened it; it concerned whether BANA's later furnishing and investigation of information associated with Claim ID 230607G1A51F, following CRA notice of Plaintiff's April 18, 2025 disputes, complied with § 1681s-2(b).

A state-court judgment may form part of the factual background of a federal statutory claim without becoming the legal source of the alleged federal injury.

For example, Plaintiff's FCRA claim under 15 U.S.C. § 1681s-2(b) alleged duties arising after consumer-reporting agencies notified Bank of America of credit-report disputes. Whether Bank of America thereafter conducted the investigation required by federal law and accurately verified or furnished the challenged information is analytically separate from whether the state court correctly entered judgment for the underlying debt.

Likewise, an alleged post-dispute representation by a debt collector does not become an injury "caused by" the state judgment merely because the same account was the subject of prior collection litigation.

The Seventh Circuit similarly explained in Gilbank that the source of the injury is only one requirement and that courts must give independent meaning to every Rooker-Feldman element. 111 F.4th at 792–95. A federal claim therefore is not transformed into an appellate attack merely because a state judgment forms part of its factual background.

The Order also quotes Defendants' characterization that Plaintiff alleged that "after the

judgment's entry, his disputes were replaced by a negative credit report." Dkt. 51 at 6 (citing Dkt. 49 at 3). Plaintiff alleged instead that challenged dispute-related notations in connection with Claim ID 230607G1A51F were removed or altered after judgment, Compl. ¶27, and consistently argued that his reporting and verification injuries existed independently of the judgment. Dkt. 43 at 4–5; Dkt. 46 at 1–2.

As alleged, BANA's receipt of CRA notices concerning Plaintiff's April 18, 2025 disputes triggered the duties under § 1681s-2(b). TransUnion issued dispute results on April 25, 2025, and Experian and Equifax issued results on May 6, 2025. Thus, at least part of the furnishing, investigation, and verification conduct challenged under the FCRA occurred months before the July 15, 2025 state-court judgment. A judgment entered in July could not have caused the alleged federal injuries arising from furnishing, investigation, and verification conduct that had already occurred in April and May. The Seventh Circuit does not apply Rooker-Feldman where the injury "was not caused by the state court, but by its adversary's conduct" out of court. Zurich Am. Ins. Co. v. Superior Ct. for State of Cal., 326 F.3d 816, 822 (7th Cir. 2003). BANA's furnishing and reinvestigation conduct is precisely that kind of out-of-court, adversary conduct—it occurred independently of, and months before, any state-court judgment. The Seventh Circuit draws the same distinction: an "independent prior injury that the state court failed to remedy" is not an injury "caused by the state court judgment." Andrade v. City of Hammond, 9 F.4th 947, 950–51 (7th Cir. 2021). At most, the state court's July 2025 judgment on the underlying debt did not remedy

BANA's alleged independent furnishing and reinvestigation conduct; the judgment did not cause that conduct or the resulting alleged injury.

Accordingly, Plaintiff respectfully submits that dismissal of the entire action based upon the conclusion that the state judgment "led to this case" did not independently analyze whether each alleged statutory injury was actually caused by that judgment.

## III. THE COURT'S FOURTH-ELEMENT ANALYSIS EQUATED CONSIDERING A STATE-COURT FINDING WITH REVIEWING AND REJECTING THE STATE JUDGMENT

This Court's Order correctly identified the governing standard: "identifying what the plaintiff has requested is the key Rooker-Feldman inquiry," and the doctrine "will not apply when, given the relief sought, a plaintiff. . . does not seek to reverse a state court judgment." Dkt. 51 at 5 (quoting Gilbank, 111 F.4th at 793). Applying that standard to Plaintiff's independent statutory claims and the corresponding relief—and, alternatively, considering the narrowed relief proposed in the attached First Amended Complaint—the fourth element does not require dismissal of the entire action.

The Order states: "For this Court to begin to consider Carter's claims, it would have to review the state judge's finding that the claims of fraud and conspiracy were not credible." Dkt. 51 at 8.

It then concludes: "To find for Carter in this matter would mean the Court reversing the judgment of the state court." Id.

Respectfully, those are distinct propositions under Gilbank. Gilbank specifically held

that courts must focus upon the relief sought, because examining facts addressed in a previous state proceeding is not necessarily equivalent to exercising appellate jurisdiction over the resulting judgment. 111 F.4th at 792–95.

The Supreme Court has likewise explained that where a federal plaintiff presents an independent claim, “albeit one that denies a legal conclusion that a state court has reached,” the federal court has jurisdiction, leaving the effect of the state judgment to principles of preclusion. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 293 (2005); see also Gilbank, 111 F.4th at 766. The question is whether the federal relief would undo, reverse, or modify the state judgment.

Plaintiff's preserved FCRA theory does not require the Court to declare that Plaintiff owed no debt, that Bank of America lacked entitlement to the $7,599.65 judgment, or that the state trial court should have entered judgment for Plaintiff.

For purposes of the federal statutory claims, the state judgment can remain fully intact.

A determination that a furnisher failed to reasonably investigate a CRA dispute, or subsequently furnished materially misleading information concerning a consumer dispute or claim status, would not vacate the state judgment or reduce the amount awarded by the Circuit Court of Cook County.

Likewise, an award of statutory or actual damages for an independent violation of federal law would not operate as an appellate reversal of the state judgment. Any such federal damages would arise from the separate statutory violation and would not

constitute a credit against, modification of, or declaration invalidating the state judgment.

Plaintiff recognizes that portions of the original Complaint's language and prayer for equitable relief could be construed more broadly. To remove any ambiguity, Plaintiff does not seek reconsideration of the dismissal of any request that would require this Court to invalidate the state judgment, enjoin enforcement of the adjudicated debt, declare that the $7,599.65 judgment is not owed, or otherwise modify that judgment. Plaintiff seeks reconsideration only as to claims and remedies that can coexist with the state judgment remaining valid and enforceable.

That narrowing gives independent effect to Gilbank's fourth requirement while respecting Rooker-Feldman's prohibition against federal district-court appellate review.

## IV. THE COURT'S RELIANCE ON THE STATE COURT'S BROAD CREDIBILITY FINDING DOES NOT NECESSARILY RESOLVE PLAINTIFF'S INDEPENDENT STATUTORY CLAIMS

The Court placed substantial weight on the state trial court's statement that testimony concerning fraud by employees of Bank of America and Blitt & Gaines was not credible. Dkt. 51 at 8.

Plaintiff does not ask this Court, through this motion, to reconsider whether the state court correctly assessed Plaintiff's testimony at the July 15, 2025 trial.

But the existence of that credibility determination does not establish that every later

federal statutory issue was actually part of the state judgment.

The federal FCRA inquiry includes, among other things, what information was transmitted through CRA dispute channels, what information Bank of America possessed when it received notice of the CRA disputes, what investigation it performed in response, and what it thereafter verified or furnished.

The state collection judgment did not itself include findings concerning each subsequent CRA transmission, each furnisher response, or each later act of claim-processing and furnishing alleged in the federal Complaint.

The Bystander's Report, Dkt. 49-1 at PageID 401-407, does not identify an adjudication of Bank of America's statutory duties under § 1681s-2(b), nor does it identify a finding concerning the reasonableness of Bank of America's investigation following CRA notice of Plaintiff's April 18, 2025 disputes. Although the Bank's witness testified generally concerning fraud investigations, the Report reflects that he did not identify the particular Claim ID when questioned about it. Plaintiff therefore does not ask this Court to reject the state court's credibility determination; the point is that the state judgment did not adjudicate the distinct statutory investigation alleged here.

Similarly, Plaintiff's FDCPA theory concerning allegedly misleading extra-judicial communications and later collection conduct does not necessarily require overturning the adjudication that the underlying balance was due.

Whether a prior state-court credibility determination has preclusive effect upon a

particular factual issue may present a preclusion question. It does not automatically convert every federal claim touching the same factual history into an appellate attack for purposes of subject-matter jurisdiction.

Gilbank cautions against collapsing those concepts. Rooker-Feldman and ordinary preclusion principles perform different functions. 111 F.4th at 792–95.

Accordingly, Plaintiff respectfully submits that the necessity of considering the existence or scope of a previous credibility finding does not, without more, establish that the federal court is being asked to reverse the state judgment.

## V. AT MINIMUM, THE COURT SHOULD PERMIT PLAINTIFF TO AMEND RATHER THAN TREAT EVERY CLAIM AS JUDGMENT-DEPENDENT

Plaintiff's pre-judgment opposition expressly requested that, if the Court found a pleading deficiency, dismissal be without prejudice and with leave to amend. Dkt. 46 at 6.

The Court dismissed the case without prejudice because a jurisdictional dismissal cannot operate as an adjudication on the merits. Dkt. 51 at 8. But the case was terminated, and Plaintiff was not afforded an opportunity to separate potentially Rooker-Feldman-sensitive allegations and remedies from the independent statutory claims.

Plaintiff therefore alternatively requests that the Court vacate the judgment for the limited purpose of permitting Plaintiff to file a First Amended Complaint, attached as Exhibit A, pursuant to Rule 15(a)(2).

The proposed amendment would materially narrow the action. Among other things, it would:

- omit ICFA, common-law fraud, and civil-conspiracy claims that may unnecessarily invite reconsideration of state-trial credibility findings;
- expressly acknowledge the existence of the July 15, 2025 state judgment and disclaim any request that this Court reverse, vacate, reduce, or enjoin enforcement of that judgment;
- identify separately the challenged post-dispute and later furnishing, verification, and claim-processing conduct;
- clarify that the FCRA claim concerns the accuracy and investigation of disputed claim/dispute information rather than the existence of the original account or the amount of the state judgment;
- limit the requested relief to remedies for independent statutory violations that do not alter the state judgment; and
- allege the June 2025 state-court order restricting further filings as part of the procedural chronology surrounding the subsequently developing federal credit-reporting issues.

After final judgment, a plaintiff ordinarily must obtain relief from the judgment before amendment may proceed. See Reilly v. Will County Sheriff's Office, 142 F.4th 924, 929–30 (7th Cir. 2025). Plaintiff therefore makes the request through this Rule 59(e) motion rather than attempting simply to file an amended complaint in a terminated

case.

This alternative would permit the Court to enforce Rooker-Feldman's jurisdictional boundary without foreclosing federal claims premised on independent conduct over which the Court has original federal-question jurisdiction.

The Seventh Circuit recently reaffirmed that where judgment is entered at the pleading stage and the plaintiff timely seeks Rule 59(e) relief in order to amend, the same liberal amendment standard of Rule 15(a)(2) applies. Agee v. Hickenbottom, Nos. 25-1737 & 25-2180, slip op. at 7 (7th Cir. July 17, 2026) (citing Reilly v. Will County Sheriff's Office, 142 F.4th 924, 929 (7th Cir. 2025)); see also Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana, 786 F.3d 510, 519–21 (7th Cir. 2015). Here, Plaintiff went further: before judgment, he expressly requested dismissal without prejudice with leave to amend if the Court identified a pleading deficiency. Dkt. 46 at 6. Plaintiff had not previously amended his Complaint.

## VI. CONCLUSION

Plaintiff respectfully requests that the Court alter or amend the judgment under Rule 59(e) because the dismissal of the entire action did not give independent effect to Rooker-Feldman's source-of-injury and review-and-rejection requirements as clarified in Gilbank. Plaintiff does not seek relief from the state-court judgment and does not request that this Court invalidate the debt adjudicated there.

Accordingly, Plaintiff respectfully requests that the Court:

(1) vacate the judgment dismissing the entire action for lack of subject-matter

jurisdiction;

(2) reinstate the federal statutory claims to the extent they arise from independent post-dispute and later furnishing, verification, investigation, claim-processing, or collection conduct, including conduct occurring both before and after the July 15, 2025 state-court judgment;

(3) permit Defendants' unresolved Rule 12(b)(6) arguments to be addressed separately on their merits, if necessary;

or, alternatively,

(4) vacate the judgment for the limited purpose of granting Plaintiff leave to file the proposed First Amended Complaint narrowing the action to independent statutory claims and non-judgment-altering relief; and

(5) grant such further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Calvin Carter

Calvin Carter, Pro Se

5006 S. Blackstone Ave. Apt. 104

calvincarter2026@gmail.com

312-342-1329

Dated: September 21, 2026