FILED
9/21/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
EMS
BC

Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| CALVIN CARTER<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A. AND<br><br>DATASEARCH NY INC D/B/A TRAKAMERICA AND<br><br>BLITT AND GAINES, P.C.,<br><br>Defendants | Case No.: 1:25-cv-13520<br><br>Judge Mary M. Rowland<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES |

# FIRST AMENDED COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Calvin Carter, pro se, and for his First Amended Complaint against Defendants Bank of America, N.A., TrakAmerica, and Blitt and Gaines, P.C., alleges as follows:

## I. INTRODUCTION

1. This action arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

2. Plaintiff does not challenge the existence of the Bank of America credit-card account, does not ask this Court to determine that the adjudicated account balance was not owed, and does not seek reversal, modification, reduction, setoff, or nonenforcement of the July 15, 2025 judgment entered by the Circuit Court of

Cook County.

3. Instead, this action concerns separate debt-collection, claim-processing, consumer-dispute, and credit-reporting conduct. Plaintiff alleges that his May 25, 2023 debt-validation correspondence was subsequently processed as **Fraud Application Claim ID 230607G1A51F** even though Plaintiff did not submit or authorize a consumer-initiated fraud-application claim.

4. Plaintiff further alleges that BANA later furnished and verified claim- and dispute-related information concerning Claim ID 230607G1A51F after receiving notice of Plaintiff's disputes from consumer reporting agencies (“CRAs”), despite information in BANA's own records concerning the claim's third-party origin.

5. The federal injuries alleged here arise from Defendants' own statutory conduct and can be adjudicated while leaving the state-court judgment fully intact.

## II. JURISDICTION AND VENUE

4. This Court has federal-question jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 1681p, and 15 U.S.C. § 1692k(d).

5. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III. PARTIES

7. Plaintiff Calvin Carter is a consumer residing in Cook County, Illinois.

8. Defendant Bank of America, N.A. (“BANA”), is a national banking association that furnished information concerning Plaintiff's account to Experian, Equifax, and TransUnion.

9. Defendant DataSearch NY Inc. d/b/a TrakAmerica is an account-receivable and

collection-management company. Plaintiff alleges that TrakAmerica participated in the handling and transmission of information concerning the BANA account and is licensed in Illinois as a collection agency under license number 017022453.

10. Plaintiff alleges that TrakAmerica regularly participates in the collection of consumer debts owed to others and is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

11. Defendant Blitt and Gaines, P.C. is an Illinois law firm that regularly engages in consumer debt collection on behalf of creditors and is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

## IV. FACTUAL ALLEGATIONS

### A. Origin and Processing of Claim ID 230607G1A51F

12. In 2023, Plaintiff became aware that BANA was furnishing a charged-off credit-card account reflecting a balance of approximately $7,599.65.

13. On May 25, 2023, Plaintiff sent debt-validation correspondence concerning the account to Blitt & Gaines.

14. Plaintiff did not submit to BANA a consumer-initiated fraud-application claim concerning the opening of the account.

15. On or about June 7, 2023, BANA opened **Fraud Application Claim ID 230607G1A51F** based upon correspondence received concerning the account.

16. Plaintiff alleges that the correspondence used to open Claim ID 230607G1A51F was his May 25, 2023 debt-validation correspondence rather than a fraud-application claim submitted or authorized by Plaintiff.

17. Claim ID 230607G1A51F resulted in claim-processing activity that included a

temporary credit associated with the $7,599.65 balance and a later reversal of that credit after BANA denied the fraud-application claim.

18. Plaintiff did not request the temporary credit, did not request a fraud-application investigation, and did not authorize the underlying claim-processing activity.

19. On May 17, 2024, Blitt & Gaines attorney Barbara Nilsen responded to correspondence from Plaintiff concerning the account and Claim ID 230607G1A51F. Nilsen wrote that Plaintiff's "application fraud has been noted to the account" and stated that the matter had been forwarded to BANA for investigation.

20. Plaintiff continued to inform BANA that he had not initiated a fraud-application claim.

21. On June 7, 2024, during a recorded call concerning Claim ID 230607G1A51F, BANA Fraud Servicing representative Shakara discussed Plaintiff's allegation that another person had caused a claim to be created in Plaintiff's name.

22. During that call, Shakara created a separate fraud report concerning the allegedly unauthorized claim activity and provided Plaintiff *Fraud Case ID 813231*.

23. Plaintiff alleges that this separate fraud report reflected BANA's notice, no later than June 2024, that Plaintiff denied initiating Claim ID 230607G1A51F.

## B. Plaintiff's CRA Disputes and BANA's Knowledge of the Claim's Origin

24. On or about December 5, 2024, Plaintiff disputed the BANA tradeline through Experian.

25. Plaintiff specifically challenged dispute- and FCBA-related information appearing in connection with the account and informed Experian that the underlying

claim/dispute activity had not been initiated by him.

26. Experian initiated a reinvestigation.

27. On December 26, 2024, Experian issued results stating that the company furnishing the information had certified it as accurate and that the BANA account had not been changed as a result of the dispute.

28. Plaintiff alleges upon information and belief that Experian transmitted his December 2024 dispute to BANA through the CRA dispute process.

29. On February 11, 2025, BANA Regulatory Complaints representative Niaisha Williams issued a written CFPB response stating that Fraud Application Claim ID 230607G1A51F had been opened on June 7, 2023 from Plaintiff's correspondence.

30. Plaintiff alleges that this response is consistent with his allegation that correspondence concerning debt validation was processed by BANA as a fraud-application claim rather than Claim ID 230607G1A51F having originated from a consumer-initiated fraud application submitted by Plaintiff.

31. On February 26, 2025, BANA Fraud Servicing supervisor Jonathan stated during a recorded telephone call that **Claim ID 230607G1A51F** had been initiated “via a third party,” which he described as a collection company.

32. Jonathan further stated that Plaintiff's May 25, 2023 correspondence had caused the matter to be treated as a fraud-application claim and made internal notes concerning the third-party origin during the call.

33. In a separate recorded call on February 26, 2025, BANA Fraud Servicing supervisor Nancy stated that claims concerning the account were being opened

"through TrakAmerica."

34. Thus, before Plaintiff's April 2025 CRA disputes, BANA possessed internal information reflecting both Plaintiff's denial that he initiated the claim and BANA personnel's characterization of Claim ID 230607G1A51F as originating through third-party collection activity.

## C. April 2025 CRA Disputes and Reinvestigation

35. On or about April 18, 2025, Plaintiff submitted disputes concerning the BANA tradeline through Experian, Equifax, and TransUnion.

36. Those disputes challenged the accuracy and completeness of claim- and dispute-related information associated with the account, including information Plaintiff alleged attributed to him claim activity he had not initiated.

37. Plaintiff alleges upon information and belief that the CRAs transmitted those disputes to BANA pursuant to the FCRA.

38. TransUnion issued dispute results on or about April 25, 2025.

39. Experian and Equifax issued dispute results on or about May 6, 2025.

40. Those results reflected that BANA had verified and/or updated information following reinvestigation without correcting the claim- and dispute-related information challenged by Plaintiff.

41. On April 29, 2025, after Plaintiff submitted the April CRA disputes, Claim ID 230607G1A51F was reopened in BANA's internal system.

42. Plaintiff did not request that Claim ID 230607G1A51F be reopened.

43. During a recorded June 3, 2025 call, BANA Fraud Servicing representative Brittany stated that BANA's system reflected that the claim had been reopened on

April 29, 2025 and that the reopening had been attributed to Plaintiff based upon an alleged inability to upload documents.

44. Plaintiff denied submitting documents, requesting reopening, or authorizing the reopening.

45. Brittany also stated that BANA's records reflected that Plaintiff had previously reported that he did not file the fraud-application claim.

46. BANA nevertheless issued additional correspondence concerning Claim ID 230607G1A51F on May 2 and May 6, 2025.

47. BANA correspondence dated May 2, 2025 and later correspondence dated August 11, 2025 stated that BANA had contacted consumer reporting agencies to place comments on Plaintiff's credit file reflecting that Plaintiff disagreed with BANA's decision concerning Claim ID 230607G1A51F.

48. During a recorded call on June 4, 2025, BANA Fraud Servicing representative Tierra stated that FCBA/consumer-dispute remarks appearing on Plaintiff's consumer reports were associated with Claim ID 230607G1A51F and that BANA had begun reporting information associated with the claim approximately thirty days after it was opened.

49. During the same call, after Plaintiff separately identified the Experian notation "FCBA dispute resolved consumer disagrees," the Equifax notation "consumer disagrees after resolution," and the TransUnion DRC notation, Tierra confirmed that each was associated with Claim ID 230607G1A51F. Tierra further explained that the credit bureaus were making notes as they received updates from BANA. Earlier in the call, Tierra had confirmed that a fraud application had been opened

in Plaintiff's name that Plaintiff had not authorized.

50. Plaintiff therefore alleges that BANA possessed information connecting the CRA dispute remarks and updates to Claim ID 230607G1A51F while simultaneously possessing information that Plaintiff had not authorized the underlying fraud-application claim and information reflecting its alleged third-party origin.

51. Plaintiff does not allege that a generic notation stating that he later disputed BANA's reporting would itself necessarily be inaccurate. Plaintiff alleges instead that the challenged furnishing was inaccurate or materially misleading because BANA linked consumer-dispute and claim-resolution reporting to Claim ID 230607G1A51F in a manner that attributed the underlying claim/dispute activity to Plaintiff even though BANA's own records reflected third-party initiation.

52. The challenged inaccuracy therefore concerns the attribution and verification of claim-related dispute information, not the existence of the account, the amount of the charged-off balance, or the validity of the later state-court judgment.

### D. TrakAmerica and Blitt & Gaines Collection-Related Conduct

53. Plaintiff alleges upon information and belief that TrakAmerica served as an account-receivable and litigation-management intermediary in connection with the BANA account and exchanged account information with BANA and Blitt & Gaines.

54. Plaintiff relies upon events occurring before November 4, 2024 as factual background concerning the origin and handling of Claim ID 230607G1A51F, not as separate time-barred FDCPA violations.

55. On May 22, 2025, in response to Plaintiff's May 8, 2025 CFPB complaint

concerning Claim ID 230607G1A51F and TrakAmerica's alleged involvement in the claim's initiation or processing, TrakAmerica stated that the state court's April 29, 2025 order striking Plaintiff's Rule 280.5 affidavit "essentially renders moot the Consumer's claims of fraud." The April 29 order attached by TrakAmerica, however, states only that Bank of America's motion to strike Plaintiff's Rule 280.5 affidavit was granted and that the matter was set for trial on July 15, 2025. See Dkt. 24-5. The order does not state that Plaintiff's Claim-ID allegations were moot or adjudicated on their merits. Plaintiff alleges that TrakAmerica's representation was materially misleading insofar as it represented that the April 29 ruling had disposed of the distinct Claim-ID allegations presented in Plaintiff's CFPB complaint.

56. Plaintiff alleges that the representation was misleading because the claim-origin dispute and related claim processing remained active at that time.

57. On July 21, 2025, Blitt & Gaines responded to Plaintiff's July 9, 2025 CFPB complaint, which expressly identified Claim ID 230607G1A51F and disputed Plaintiff's initiation or reopening of that claim. Blitt & Gaines emphasized that its records showed Plaintiff had opened the underlying BANA credit-card account in 2016, characterized Plaintiff's prior motions concerning his allegations as "baseless," and relied upon the July 15, 2025 state-court judgment and credibility determination. Plaintiff alleges that the response was materially misleading insofar as it treated the underlying account opening and state-court disposition as resolving the distinct dispute concerning the origin and processing of Claim ID 230607G1A51F.

58. Plaintiff alleges that these 2025 representations were made in connection with the collection and administration of the BANA debt and materially misstated or obscured the origin of the claim-related activity being attributed to Plaintiff.

## E. Later and Post-Judgment Claim-Processing Activity

59. On July 15, 2025, the Circuit Court of Cook County entered judgment in favor of BANA concerning the underlying debt.

60. Plaintiff does not challenge that judgment in this action.

61. On or about August 10, 2025, Claim ID 230607G1A51F was again reopened in BANA's claim-processing system.

62. Plaintiff did not request or authorize that reopening.

63. On August 22, 2025, BANA mailed correspondence stating that it had "closed" Claim ID 230607G1A51F.

64. Plaintiff alleges that BANA did not provide documentation showing that Plaintiff had requested the August reopening or initiated the original fraud-application claim.

65. BANA subsequently removed at least some claim/dispute-related comments from consumer reports. Experian removed the FCBA-related remark in approximately August 2025, and TransUnion removed DRC-related remarks in approximately October 2025, while Equifax's October 2025 report still displayed codes identified as "167 – Consumer Disputes After Resolution" and "169 – Removes Compliance Condition Codes."

66. Plaintiff alleges that the varying treatment of those remarks occurred after his CRA disputes and demonstrates continuing claim- and dispute-reporting activity

separate from the state-court judgment itself.

67. As a result of the challenged furnishing and dispute handling, Plaintiff alleges that inaccurate or materially misleading information concerning his conduct was disseminated to consumer reporting agencies, causing reputational injury, impairment of his credit information, out-of-pocket expenses associated with disputing and documenting the reporting, emotional distress resulting from the continued disputed reporting and claim-processing activity, and other damages to be established through discovery.

## V. RELATIONSHIP TO THE PRIOR STATE-COURT JUDGMENT

68. On July 15, 2025, the Circuit Court of Cook County entered judgment in favor of BANA for the underlying account balance and costs.

69. Plaintiff does not seek reversal, modification, reduction, setoff, nonenforcement, or collateral review of that judgment.

70. Plaintiff does not allege that BANA inaccurately furnished the existence or amount of the account merely because the state court later entered judgment in BANA's favor.

71. Plaintiff's FCRA claim concerns separate conduct arising from the CRA-dispute process. Plaintiff submitted CRA disputes on or about April 18, 2025; TransUnion issued results on or about April 25, 2025; and Experian and Equifax issued results on or about May 6, 2025.

72. Thus, substantial portions of the investigation and verification conduct challenged under 15 U.S.C. § 1681s-2(b) occurred before the July 15, 2025 state-court judgment.

73. Additional claim-processing and reporting conduct alleged herein occurred after judgment.

74. In June 2025, while Plaintiff's CRA disputes, furnisher reinvestigations, and related reporting activity remained ongoing, the state court entered an order requiring Plaintiff to obtain leave of court before making additional filings.

75. Plaintiff alleges that this procedural restriction limited his ability to present subsequently developing federal credit-reporting issues within the state collection proceeding.

76. Plaintiff does not allege that any Defendant opened the BANA account in 2016.

77. Plaintiff alleges instead that his May 25, 2023 correspondence was subsequently processed as Claim ID 230607G1A51F and that Defendants later engaged in the independent collection, dispute-handling, claim-processing, furnishing, and reinvestigation conduct alleged above.

78. The relief requested in this Complaint can be awarded without reversing, vacating, modifying, or reducing the July 15, 2025 state-court judgment.

79. Plaintiff does not seek recovery of the $7,599.65 state-court judgment, costs awarded in that action, or any amounts paid toward that judgment as damages in this action.

## VI. CAUSES OF ACTION

**COUNT I – VIOLATION OF FDCPA (15 U.S.C. § 1692e)** (Against Blitt and Gaines and TrakAmerica)

80. Plaintiff incorporates paragraphs 1 through 79 to the extent relevant to this Count.

81. At all relevant times, Blitt & Gaines and TrakAmerica acted as debt collectors

within the meaning of the FDCPA in connection with collection of the BANA consumer debt.

82. Events occurring before November 4, 2024 are alleged as background concerning the origin and handling of Claim ID 230607G1A51F. Plaintiff seeks relief under this Count based upon alleged false, deceptive, or misleading representations occurring within the applicable limitations period.

83. On May 8, 2025, Plaintiff submitted a CFPB complaint concerning the BANA collection account that specifically identified **Claim ID 230607G1A51F**, disputed Plaintiff's initiation of that claim, and alleged TrakAmerica's involvement in the initiation or processing of the claim.

84. On May 22, 2025, TrakAmerica responded that the state court's April 29, 2025 order striking Plaintiff's Rule 280.5 affidavit "essentially renders moot the Consumer's claims of fraud."

85. The April 29, 2025 order states that BANA's motion to strike Plaintiff's Rule 280.5 affidavit was granted and sets the collection action for trial. See Dkt. 24-5. The order does not reference Claim ID 230607G1A51F, determine who initiated or processed that claim, or adjudicate TrakAmerica's alleged involvement in that claim.

86. Plaintiff alleges that TrakAmerica's May 22, 2025 representation was false, deceptive, or materially misleading insofar as it represented that the April 29 procedural ruling had disposed of the distinct Claim-ID allegations presented in Plaintiff's CFPB complaint.

87. On July 9, 2025, Plaintiff submitted another CFPB complaint concerning the

collection account that expressly identified Claim ID 230607G1A51F, disputed Plaintiff's initiation or reopening of that claim, and alleged involvement by Blitt & Gaines and TrakAmerica in its processing.

88. On July 21, 2025, Blitt & Gaines responded that it had reviewed its internal file, emphasized that its records showed Plaintiff had opened the underlying BANA credit-card account in February 2016, characterized Plaintiff's prior motions concerning his allegations as "baseless," and relied upon the July 15, 2025 state-court judgment and the court's credibility determination concerning allegations against BANA and Blitt & Gaines.

89. Blitt & Gaines did not substantively address the distinct allegation presented in Plaintiff's CFPB complaint concerning who initiated or reopened Claim ID 230607G1A51F.

90. Plaintiff alleges that, considered in the context of the CFPB complaint to which it was responding, Blitt & Gaines's July 21, 2025 response was false, deceptive, or materially misleading insofar as it treated the opening of the underlying 2016 credit-card account and the state-court disposition as resolving the separate dispute concerning the origin and processing of Claim ID 230607G1A51F.

91. Before issuing that response, Blitt & Gaines had notice that Plaintiff disputed having initiated the fraud-application claim, including through its own May 2024 correspondence stating that "application fraud" had been noted and forwarded to BANA for investigation.

92. Plaintiff alleges that the May 22, 2025 TrakAmerica response and July 21, 2025 Blitt & Gaines response were made in the context of the ongoing collection of the

BANA debt. The communications concerned the collection account, the pending or completed collection litigation, and allegations arising from Defendants' handling of that account.

93. The alleged representations were material because they were capable of affecting a consumer's understanding of what issues concerning the collection account had actually been resolved, whether the distinct Claim-ID dispute remained unresolved, and how the consumer should respond to continuing collection activity.

94. Plaintiff alleges that the foregoing conduct violated 15 U.S.C. § 1692e and § 1692e(10).

95. As a result of the alleged violations, Plaintiff seeks actual damages, statutory damages, and costs to the extent authorized by 15 U.S.C. § 1692k.

**COUNT II – VIOLATION OF FCRA (15 U.S.C. § 1681s-2(b))** (Against BANA)

96. Plaintiff incorporates paragraphs 1 through 79 to the extent relevant to this Count.

97. BANA furnished information concerning Plaintiff's account to Experian, Equifax, and TransUnion.

98. On or about December 5, 2024, Plaintiff disputed by telephone with Experian the claim- and dispute-related information associated with **Claim ID 230607G1A51F** appearing in connection with the BANA tradeline.

99. Experian's December 26, 2024 results stated that the furnisher had certified the information as accurate and that the account had not been changed as a result of the dispute.

100. Plaintiff alleges upon information and belief that Experian transmitted the

dispute to BANA, thereby triggering BANA's obligations under 15 U.S.C. § 1681s-2(b).

101. On or about April 18, 2025, Plaintiff again disputed the challenged reporting through Experian, Equifax, and TransUnion.

102. Plaintiff alleges upon information and belief that each CRA transmitted notice of the dispute to BANA pursuant to the FCRA.

103. Upon receiving CRA notice, BANA was required to investigate the disputed information, review the relevant information provided by the CRAs, report the results of its investigation, and take the corrective action required by § 1681s-2(b) if the disputed information was inaccurate, incomplete, or could not be verified.

104. Before the April 2025 disputes, BANA possessed internal information reflecting that Plaintiff denied initiating Claim ID 230607G1A51F.

105. BANA also possessed the February 26, 2025 internal notation reflecting that **Claim ID 230607G1A51F** had been initiated "via a third party," identified by BANA personnel as a collection company.

106. Nevertheless, after CRA notice, BANA verified and/or continued furnishing claim- and dispute-related information associated with Claim ID 230607G1A51F without correcting the attribution challenged by Plaintiff.

107. On April 29, 2025, after Plaintiff submitted the April CRA disputes, BANA's system reopened Claim ID 230607G1A51F at 12:15pm and attributed the reopening to Plaintiff even though Plaintiff alleges that he made no such request.

108. BANA's own records also reflected that Plaintiff previously denied initiating the claim.

109. TransUnion's April 25, 2025 results and Experian's and Equifax's May 6, 2025 results reflected verification and/or updating of the disputed tradeline without correcting the challenged claim/dispute attribution.

110. BANA's May 2, 2025 and August 11, 2025 correspondence further stated that BANA had contacted CRAs to add comments reflecting that Plaintiff disagreed with BANA's decision concerning Claim ID 230607G1A51F.

111. Plaintiff does not allege that it was inaccurate merely to indicate that he later disputed BANA's reporting.

112. The alleged inaccuracy or material misleadingness concerns BANA's furnishing and verification of dispute- and claim-resolution information associated with Claim ID 230607G1A51F while BANA possessed information that Plaintiff had not authorized the underlying fraud-application claim and that the claim had originated through third-party collection activity.

113. Plaintiff alleges that the information, viewed in context, was inaccurate or materially misleading concerning Plaintiff's conduct even if the underlying account balance and charge-off status were otherwise accurate.

114. Plaintiff further alleges that BANA's failure to reconcile the CRA dispute with its own internal claim-origin information resulted in an unreasonable investigation under § 1681s-2(b).

115. The alleged FCRA violation is therefore independent of the existence of the account and independent of the later state-court judgment concerning the underlying debt.

116. Plaintiff alleges that BANA's repeated verification despite prior notice,

internal notes concerning third-party initiation, and Plaintiff's continued denial was willful or reckless within the meaning of 15 U.S.C. § 1681n or, alternatively, negligent within the meaning of 15 U.S.C. § 1681o.

117. As a result of BANA's alleged violations, Plaintiff suffered dissemination of inaccurate or materially misleading information to third parties, reputational harm, credit-related injury, out-of-pocket expenses, emotional distress, and other damages to be established through discovery.

## VII. PRAYER FOR RELIEF

Plaintiff requests the following:

A. Enter judgment in Plaintiff's favor on the claims established at trial;

B. Award actual damages as permitted by law;

C. Award statutory damages where authorized by statute;

D. Award punitive damages where authorized by law and supported by the evidence;

E. Award costs as permitted by law; and

F. Grant such other relief as the Court deems just and proper, provided that Plaintiff does not seek relief reversing, modifying, reducing, enjoining enforcement of, or otherwise disturbing the July 15, 2025 state-court judgment.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

Executed on this 21st day of September, 2026.

**/s/ Calvin Carter**

Calvin Carter

5006 S. Blackstone Avenue Apartment 104, Chicago, Cook County, IL

312-342-1329

calvincarter2026@gmail.com

Pro Se Plaintiff